UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
**SILICIA ANIQUE JACKSON**,                                       :
                                                                  :
                Plaintiff,                :    **MEMORANDUM DECISION AND**
                                                                  :    **ORDER**
       – against –                         :
                                                                  :    23-CV-7759 (AMD) (PK)
**AMAZON.COM, INC. AND AMAZON.COM**                               :
**SERVICES LLC**,                                                 :
                                                                  :
                Defendant.                :
----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      Before the Court is the defendants' motion to dismiss this action, in which the plaintiff alleges that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), when they did not accommodate her religious objection to weekly COVID-19 testing. The plaintiff seeks reimbursement for lost wages and litigation fees, compensatory and punitive damages, and injunctive relief. For the reasons that follow, the defendants' motion is granted.

## BACKGROUND

      In 2021, the plaintiff was employed as a fulfillment associate at the defendants' warehouse in Staten Island, New York. (ECF No. 14 ¶¶ 1–2, 7.)[1] On December 23, 2021, the defendants informed all employees that they were "expected to get at least one dose of the COVID-19 vaccine" by December 27, 2021, in accordance with New York City's "vaccination requirement for private-sector employees." (*Id.* ¶ 7.)

      On December 26, 2021, the plaintiff submitted a "Request for Religious Exemption from COVID-19 Vaccination Requirement," in which she stated that her "sincerely held religious

---

[1] Although the plaintiff names Amazon.com Services LLC and Amazon.com Inc. as defendants, the plaintiff was employed only by Amazon.com Services LLC. (ECF No. 19 at 5 n.1.)

belief" prevented her from taking the vaccine because "to do so would undermine the way my Creator designed my natural body to work and function on Earth, my spiritual body, my soul's purpose and my soul's ascension and passage into Heaven." (ECF No. 20-1.)[2] Tanya Donaldson, a member of the defendants' accommodations department, told the plaintiff that she could continue to work while her exemption request was pending. (ECF No. 14 ¶¶ 9, 11–13.)

On January 7, 2022, the plaintiff's exemption request was approved subject to three conditions: (1) that she wear a mask at the warehouse; (2) that she maintain social distancing; and (3) that she take and submit a COVID-19 test every seven days. (*Id.* ¶¶ 14–15.) On January 13, 2022, the plaintiff told Donaldson that COVID-19 testing "is also against her sincerely held religious beliefs," and offered "self-screening" as an alternative precaution. (*Id.* ¶¶ 16–17.)[3] On January 14, 2022, Donaldson replied that "New York is mandating that you must take a covid test every 7 days" and that self-screening is not a viable alternative because "a person [may be] asymptomatic . . . but they . . . can be a carrier or spread the virus to others." (*Id.* ¶ 26.) Donaldson also wrote that if testing "is something [the plaintiff could not] agree to, [the defendants] would put [her] on a personal leave of absence and . . . would work with the job search reassignment team to try and place [her] at a site outside of New York," a process that could take two weeks. (*Id.*) The plaintiff responded that day, and asked Donaldson to send her the New York "code, law or executive order" that "states the condition for testing and accommodations." (*Id.* ¶ 27.)

---

[2] Because the plaintiff's amended complaint incorporates this document by reference, the Court considers it on the motion to dismiss. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint.").

[3] The plaintiff explained that self-screening "would involve me staying at home if I have a certain set [of] symptoms or if I am feeling sick." (*Id.* ¶ 32.) In addition, she was "willing to take [her] temperature before entering the building to work. (*Id.*)

2

In a January 20, 2022 email, Donaldson explained that "testing is Amazon's effort to accommodate the mandate that is in place in NY" and was "based on the guidance [from] Amazon's legal team." (*Id.* ¶ 28.) Donaldson also asked the plaintiff whether she would be willing to take a "spit test." (*Id.*) On January 23, 2022, the plaintiff responded that a spit test also violates her religious beliefs. (*Id.* ¶ 31.) She also repeated her request to "self-screen," and asserted that the New York City Department of Health permits "employer[s to] offer other accommodations besides testing." (*Id.* ¶¶ 32–33.) Donaldson replied that self-screening was not a suitable alternative to testing, and that the plaintiff could look for virtual or out-of-state positions that would not require testing. (*Id.* ¶ 35.)

On January 28, 2022, the plaintiff told Donaldson that she could not find any positions on the defendants' internal network and asked if Donaldson could "transfer [her] to a virtual job." (*Id.* ¶ 36.) That same day, the plaintiff met with an HR representative who told her that weekly testing was a requirement, and that there were no other accommodations available. (*Id.* ¶ 37.)[4] Bonnie Molina, another member of the defendants' accommodation team, emailed the plaintiff that she would be placed on leave if she did not comply with the testing requirement. (*Id.* ¶ 40.)

In a February 2, 2022 email, the plaintiff told Molina that she was "appealing Amazon's decisions . . . to deny [her] an accommodation to their weekly testing requirement," and offered "some ideas" for alternative accommodations, including self-screening, entering through a different door, virtual work, or assignment to an out-of-state facility. (*Id.* ¶ 42.)[5] The plaintiff wrote a second email to Molina on February 7, 2022, stating that she was "not in agreement with

---

[4] On February 1, 2022, the plaintiff spoke with a different member of HR, who told her that the only available accommodation was testing. (*Id.* ¶ 41.)

[5] The plaintiff asked whether the defendants would cover "the added expense of gas, tolls and double taxation" if she relocated to an out-of-state facility. (*Id.*)

3

being placed on [leave]" and asking, among other things, how long the leave would last. (*Id.* ¶ 43.) Molina responded on February 8, 2022, that the defendants could not adopt the plaintiff's proposed alternative accommodations, and that the plaintiff would be placed on leave. (*Id.* ¶ 44.)

On February 22, 2022, the plaintiff was placed on a sixty day leave of absence. (*Id.* ¶ 54.)[6] Two days later, however, Molina informed the plaintiff by email that "leadership" determined that the plaintiff did not have to do "weekly testing" and that she could "return back to [her] next scheduled shift" as long as she wore a mask and maintained social distancing. (*Id.* ¶ 59.)[7] On March 3, 2022, the plaintiff's leave of absence was cancelled. (*Id.* ¶ 67.)

The plaintiff filed a complaint on October 17, 2023 (ECF No. 1.),[8] which she amended on March 7, 2024 (ECF No. 11) and March 26, 2024 (ECF No. 14). The defendants now move to dismiss the second amended complaint. (ECF Nos. 18, 19.)

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R Civ. P. Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a plaintiff need not set forth "detailed factual allegations," a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court deciding a

---

[6] A February 24, 2022, email from the case manager overseeing the plaintiff's leave states that the plaintiff's leave began on February 21, 2022. (*Id.* ¶ 57.)

[7] There were no available shifts from February 24, 2022 through March 2, 2022. (*Id.* ¶¶ 60, 62.)

[8] The original complaint includes evidence that the plaintiff exhausted her administrative remedies with the Equal Employment Opportunity Commission before bringing suit. (ECF No. 1 at 34–36.)

4

Rule 12(b)(6) motion "accept[s] all factual allegations in the complaint as true and draw[s] all inferences in the plaintiff's favor."  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

The Court "liberally construe[s]" *pro se* filings and evaluates them by "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020).  A *pro se* party's allegations must be "read to raise the strongest arguments that they suggest."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).  However, even a "*pro se* complaint must state a plausible claim for relief," *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021), and the Court cannot "invent factual allegations."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## DISCUSSION

Under Title VII, employers cannot "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  An employee "may claim a violation of religious discrimination under Title VII under theories of either disparate treatment or denial of reasonable accommodation."  *Weber v. City of New York*, 973 F. Supp. 2d 227, 249 (E.D.N.Y. 2013) (quoting *Bind v. City of New York*, No. 08-CV-11105, 2011 WL 4542897, at *9 (S.D.N.Y. Sept. 30, 2011)); *see also Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, No. 10-CV-1285, 2012 WL 3064170, at *6 n.8 (E.D.N.Y. July 27, 2012) ("There are two types of religious discrimination claims that can be brought under Title VII: disparate treatment . . . and failure to accommodate.").

5

The plaintiff seeks relief under both theories, alleging that the defendants "fail[ed] to provide a reasonable accommodation [to her] religious exemption request for COVID-19 testing," and subjected her to "disparate treatment" by asking her to wear a mask and undergo weekly testing without "plac[ing] the same demands on employees who were similarly situated." (ECF No. 14 ¶¶ 88–89, 91.)  As explained below, the plaintiff does not state a claim under either theory.

**I.      Failure to Accommodate**

When an employee raises a genuine religious conflict with a "requirement of employment," the employer "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).  To state a claim for failure to accommodate, the employee must show that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Weber v. City of New York*, 973 F. Supp. 2d 227, 258 (E.D.N.Y. 2013) (quoting *Bowles v. New York City Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008).  If the plaintiff adequately alleges these elements, "the burden shifts to the employer to show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden." *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

The defendant accommodated the plaintiff's religious exemption request in connection with the vaccine requirement by permitting her to submit weekly COVID-19 test results, maintain social distancing, and wear a mask at work.  (ECF No. 14 ¶ 15.)  The plaintiff challenges the weekly COVID-19 testing aspect of the accommodation.  (*Id.* ¶ 88.)  Although the

6

plaintiff maintains that COVID-19 testing conflicts with her religious beliefs, she does not explain why that is so. In any event, the defendants proposed reasonable accommodations to that objection. For these reasons, the plaintiff has not adequately pled a Title VII violation.

### a. Conflict with an Employment Requirement

A plaintiff claiming failure to accommodate claim must allege "a bona fide religious belief that conflicts with an employment requirement." *Bowles*, 285 F. App'x at 813. Title VII defines religion broadly to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). To determine whether a religious belief is *bona fide*, courts look to "whether the beliefs professed by a claimant are sincerely held and whether they are, in [her] own scheme of things, religious." *Haczynska v. Mount Sinai Health Sys., Inc.*, No. 23-CV-3091, 2024 WL 3178639, at *12 (E.D.N.Y. June 26, 2024) (quoting *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 720 (S.D.N.Y. 2023)). The sincerity of a person's beliefs "is a question of fact [that is] unsuitable to resolution at the motion to dismiss stage;" however, whether those beliefs are religious turns on the plaintiff's "conce[ption] of the beliefs as religious in nature." *Jackson v. New York State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, No. 23-CV-04164, 2024 WL 1908533, at *5 (E.D.N.Y. May 1, 2024) (citations and internal quotations omitted). To qualify as religious, "beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981).

If the plaintiff establishes a *bona fide* religious belief, she must then explain how it conflicts with a specific employment requirement. The plaintiff must "plausibly allege that [she] actually required an accommodation of [her] religious practice—in other words, that [her] *religious beliefs* made such an accommodation necessary." *Giurca v. Bon Secours Charity*

7

*Health Sys.*, No. 23-200, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024) (emphasis in original). "It is not enough for plaintiff to assert that [she] *desired* an accommodation." *Id.* (emphasis in original).

In her religious exemption request, the plaintiff adequately alleged that taking a COVID-19 vaccine would violate her "sincerely held religious belief" — that it would "undermine the way my Creator designed my natural body to work and function on Earth, my spiritual body, my soul's purpose and my soul's ascension and passage into Heaven." (ECF No. 20-1.) This statement reflects that the plaintiff's beliefs are inherently religious and sufficiently establishes a *bona fide* religious belief at the motion to dismiss stage. *See Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 429 (E.D.N.Y. 2010) ("[A] person need not be a member of a formal religious sect or church to have 'religious' beliefs."), *aff'd*, 500 F. App'x 16 (2d Cir. 2012).[9]

Courts recognize the "nexus between the objection to immunization and [a person's] own religious beliefs." *Gardner-Alfred*, 651 F. Supp. 3d at 721; *see also Jackson*, 2024 WL 1908533, at *5 ("Plaintiff then explained that she follows Christianity and explained why she believes that taking the COVID-19 vaccine would violate several provisions of her faith's sacred text."); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023) ("Plaintiff advised [the defendant] that, as a practicing Christian, his sincerely held religious beliefs prevented him from receiving a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines."), *aff'd,* No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024).

---

[9] The parties debate whether *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, (2015), stands for the proposition that the plaintiff must plead a *bona fide* religious belief at all. (ECF No. 21 at 14–16; ECF No. 23 at 3–4.) But *Abercrombie* concerns disparate treatment, rather than failure to accommodate claims. 575 U.S. 771–75. And, in any event, the plaintiff has adequately alleged a *bona fide* religious belief. (ECF No. 20-1.)

8

As explained above, the plaintiff described how the COVID-19 vaccination conflicted with her religious beliefs. She does not, however, explain how testing conflicted with those beliefs. Instead, she merely repeats that testing, including the defendants' alternative offer of a "spit test," would violate her "sincerely held religious beliefs." (ECF No. 14 ¶¶ 16, 21, 31, 42, 63.) In essence, the plaintiff alleges that she "desired an accommodation" to testing, not that her religious beliefs "make such an accommodation [to testing] necessary." *Giurca*, 2024 WL 763388, at *1 (emphasis omitted). Accordingly, the plaintiff has not satisfied the first element of a failure to accommodate claim.[10]

### b.  Reasonable Accommodation

In any event, however, the defendants offered reasonable accommodations. Dismissal of a failure to accommodate claim is warranted if the employer can "show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden." *Cagle*, 680 F. Supp. 3d at 435.

A reasonable accommodation "is one that 'eliminates the conflict between employment requirements and religious practices.'" *Elmenayer v. ABF Freight Sys.*, No. 98-CV-4061, 2001

---

[10] Courts in other circuits have reached the same conclusion. *See, e.g., Allen v. Benson*, 691 F. Supp. 3d 746, 761 (E.D. Tex. 2023) ("[I]t is unclear . . . how Plaintiff's allegations as to the science underlying the saliva test are not the 'purely secular considerations' that the Supreme Court has established are not protected religious beliefs." (citations omitted)); *Bowlin v. Bd. of Dirs. of Judah Christian Sch.*, 695 F. Supp. 3d 1003, 1008 (C.D. Ill. 2023) ("Plaintiffs do not identify any religious beliefs that are offended by the regular testing requirement in lieu of vaccination . . . . [s]imply stated, Plaintiffs cannot request an accommodation and then complain they are being treated differently than others due to the requested accommodation."); *Ulrich v. Lancaster Gen. Health*, No. 22-CV-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023) (rejecting the plaintiff's claim that her "reliance upon a divine 'command . . . to exercise bodily autonomy,'" adequately alleged a religious conflict with a COVID-19 testing requirement); *Prida v. Option Care Enters., Inc.*, No. 5:23-CV-00905, 2023 WL 7003402, at *5 (N.D. Ohio Oct. 24, 2023) ("While [the plaintiff's] request for accommodation [to COVID-19 testing] and later emails did use some religious language, including several quotes from the Bible, these attempts to couch secular preferences amongst generic religious statements do not amount to a sincerely held religious belief.").

9

WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)).  While the employer must offer a reasonable accommodation for the employee's religious beliefs, "the employee, too, must make some effort to cooperate with an employer's attempt at accommodation." *Jamil v. Sessions*, No. 14-CV-2355, 2017 WL 913601, at *10 (E.D.N.Y. Mar. 6, 2017) (citing *Elmenayer*, 2001 WL 1152815, at *5).  Indeed, employers facing a religious accommodation request "need not offer the accommodation the employee prefers." *Cosme*, 287 F.3d at 158.  Rather, once a "reasonable accommodation is provided, the statutory inquiry ends." *Id*.

The defendants excused the plaintiff from the vaccine requirement as long as she wore a mask, maintained social distancing, and submitted weekly COVID-19 test results.  (ECF No. 14 ¶ 15.)  These precautionary measures were based on well-founded compliance and safety concerns (*id.* ¶¶ 26, 28), and "eliminate[d] the conflict" between the plaintiff's religious beliefs and the vaccine requirement.  *See Elmenayer*, 2001 WL 1152815, at *5; *see also Jackson v. Methodist Health Servs. Corp.*, No. 23-1464, 2024 WL 4834421, at *4 (7th Cir. Nov. 20, 2024) ("Conditioning the [COVID-19 vaccination] exemption on weekly testing, a requirement imposed by the governor's executive order, was reasonable.").

After the plaintiff objected to the testing requirement, the defendants considered her proposed alternative accommodations, including "self-screening," entering through a different door, virtual work, or assignment to an out-of-state facility.  (ECF No. 14 ¶¶ 17, 26, 32, 35–36, 42, 44.)  Those alternatives were not sufficient to fulfill the defendants' compliance and safety obligations, so the defendants suggested that the plaintiff could look for a virtual or out-of-state position with the company.  (*Id.* ¶¶ 26, 35, 44).  These were reasonable accommodations.  *See Thompson v. New York City Dep't of Prob.*, 348 F. App'x 643, 645–46 (2d Cir. 2009) ("[The

defendant] engaged in an interactive process to reasonably accommodate [the plaintiff], including transfer to a new position . . . . [t]hus, she failed to establish a *prima facie* claim of failure to reasonably accommodate.").[11]  Accordingly, even if the plaintiff adequately alleged the elements of a failure to accommodate cause of action, her claim must be dismissed.

## II. Disparate Treatment

Title VII disparate treatment claims are governed by the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To allege a claim for disparate treatment, a plaintiff must first establish that: "(1) [she] belonged to a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 304 (E.D.N.Y. 2014) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)).  Once a plaintiff "meets this initial burden, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the" adverse action. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010).  If the defendant does so, the plaintiff has an opportunity to demonstrate that the "real reason" for the adverse action was actually discriminatory. *Id.*

The plaintiff has not satisfied her burden.  Even if the plaintiff pled the first three elements, she does not allege facts that give rise to the inference that the defendants acted with discriminatory intent.  For example, she has not shown that the defendants "treated plaintiff 'less

---

[11] That there were no immediately available positions does not make the accommodation unreasonable. The defendants informed the plaintiff that finding a suitable position could take "up to 2 weeks" after she was put on leave. (ECF No. 14 ¶ 26.)  It is not the defendants' obligation to create a new position at the plaintiff's behest. *See Wildman v. Verizon Corp.*, No. 1:05-CV-899, 2009 WL 104196, at *2 (N.D.N.Y. Jan. 14, 2009) ("Where an employer provides an interim reasonable accommodation, its delay in providing accommodation is not a failure to accommodate.").

11

favorably than a similarly situated employee outside [her] protected group.'" *Id.* (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  An employee is similarly situated to co-employees if she was (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).  "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases . . . . [i]n other words, the comparator must be similarly situated to the plaintiff in all material respects." *Guzman v. Crothall Healthcare Inc.*, No. 17-CV-4306, 2021 WL 5048993, at *9 (E.D.N.Y. Sept. 29, 2021) (citations and internal quotations omitted).

Nothing in the amended complaint suggests that the plaintiff was treated less favorably than her similarly situated coworkers.  The plaintiff cursorily asserts that the defendants "did not place the same demands" — masking, testing, and going on leave — "on employees who were similarly situated."  (ECF No. 14 ¶ 91.)  Yet, the amended complaint does not explain how any of the plaintiff's coworkers were treated differently, let alone identify those employees.  In fact, the plaintiff acknowledges that the defendants notified all employees that masks "remain[ed] required for anyone entering our U.S. Operations facilities who is not fully vaccinated."  (*Id.* ¶ 49, 61, 70, 73.)  In other words, coworkers who were similarly situated to the plaintiff were subject to the same requirements.

In her opposition, the plaintiff argues that the defendants "intentionally discriminat[ed] between two Title VII protected groups" by instructing that "that only the fully vaccinated employees can come to work without wearing a mask" because only employees "who were not fully vaccinated were those that applied for medical and religious accommodations."  (ECF No. 21 ¶ 9(g).)  But the vaccinated and unvaccinated employees were not similarly situated; only

12

those who refused the vaccine were required to wear masks, a restriction that was applied consistently across that group. (*See* ECF No. 14 ¶ 49, 61, 70, 73.) Moreover, disciplining an employee for refusing to comply with a masking requirement is not a Title VII violation. *Kaba v. Hope Home Care*, No. 22-CV-6384, 2023 WL 5510640, at *4 (E.D.N.Y. Aug. 26, 2023) (dismissing Title VII claim where the plaintiff's "suspension was predicated on her refusal to wear a mask at work").

The plaintiff was put on leave only after she refused to comply with the defendants' testing requirement. (ECF No. 14 ¶¶ 44, 54.) The defendants' decision was premised on the local regulations and the need to keep other employees safe, but they offered the plaintiff the opportunity to pursue a different position at the company. (*Id.* ¶ 35.) At no point did the defendants question, disparage, or otherwise discriminate against the defendant for her religious beliefs. Accordingly, the plaintiff has not alleged a disparate treatment claim.

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted, and the plaintiff's complaint is dismissed.

The Court denies the plaintiff a third opportunity to amend her complaint. (ECF Nos. 11, 14.) Further leave is not warranted because the "problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, because "[r]epleading would . . . be futile," the plaintiff's request for leave to amend is denied. *Id*.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

13

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       December 5, 2024

14